UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| RANDALL MCCOY, et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 08-112 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JIM BOOTH, et al., | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Jim Booth ("Booth") filed a motion to dismiss or, in the alternative, for summary judgment, R. 21. Booth provided evidence that he was not involved in the alleged violations of the plaintiffs' constitutional rights. Since the plaintiffs provided no evidence in response, *see* R. 33, to show how Booth violated their constitutional rights, Booth's motion for summary judgment must be granted.

### BACKGROUND

For the purposes of this opinion, the Court accepts the complaint's facts at face value. *See* R. 1. In addition, the plaintiffs provide no evidence to contest the facts stated in Booth's affidavit, *see* R. 21, Ex. 1, Booth Aff. Therefore, those facts are uncontested. The facts raised in the plaintiffs' response are similarly uncontested. *See* R. 33.

In July 2007, Booth was a commander of the Kentucky State Police ("KSP") Post No. 9, in Pikeville, Kentucky, where Defendant Jared Alfrey was a police trooper. R. 21, Ex. 1, Booth Aff. at 1. Alfrey did not report directly to Booth nor did he have daily contact with Booth.

*Id.* Rather, a sergeant and a lieutenant were between Alfrey and Booth in the chain of command. *Id.*

On or around July 3, 2007, Plaintiff Randall McCoy had an argument with Plaintiff Benita Damron and then left her home. R. 1, at 2. After leaving her home, McCoy waved down Alfrey, who was in a KSP cruiser. *Id.* He asked Alfrey to assist him in retrieving his belongings from Damron's home. *Id.* Alfrey went with McCoy to her home. *Id.* Alfrey entered Damron's home while McCoy waited outside. *Id.* Alfrey handcuffed Damron in her home and then put her in his cruiser. *Id.* Alfrey also handcuffed McCoy and placed him in his cruiser. *Id.* at 3.

Alfrey did not respond to the plaintiffs' question about whether or not they were under arrest. *Id.* Instead, Alfrey took them to an isolated mine shaft. *Id.* Alfrey pulled McCoy out of the cruiser, removed the handcuffs, and told him to place his hands on his head. *Id.* Alfrey struck McCoy numerous times in the face. *Id.* He placed the handcuffs back on McCoy and returned him to the KSP cruiser. *Id.*

Alfrey started to drive the plaintiffs away from the isolated area but then returned there. *Id.* Alfrey again removed McCoy from the car and again he hit McCoy. *Id.* at 4. He also bit McCoy and used pepper spray on him. *Id.* Damron saw all of this from the backseat of the KSP cruiser. *Id.*

After this second beating, Alfrey took McCoy to the hospital, where he received treatment for his alleged injuries. *Id.* At the hospital, Pike County Sheriff's Department officers took custody of the plaintiffs for processing. *Id.* Thereafter, the plaintiffs spent three days at KSP Post No. 9. *Id.* at 5. There is no evidence presented that McCoy or Damron was convicted of

any crime based on the arrest.

On the day of the arrest, July 3, 2007, Alfrey informed Sergeant Steve Spurlock that he used pepper spray on McCoy. R. 21, Ex. 1, Booth Aff. at 3. Because of Alfrey's alleged use of force against McCoy, Sergeant Spurlock conducted a response to resistance investigation. *Id.* Two days later, on July 5, 2007, his investigation determined that Alfrey may have violated KSP policy, and thus, KSP suspended Alfrey from duty. *Id.* Sergeant Spurlock's investigation also recommended an internal affairs investigation. *Id.* at 3-4.

On July 17, 2007, McCoy sent a letter to KSP alleging that Alfrey assaulted him, which Major James Vanhook forwarded to Lieutenant Tom Lilley. R. 33, Ex. 1 at 1. On July 24, 2007, Lieutenant Lilley contacted Sergeant Spurlock, the responding supervisor for Alfrey's use of force on July 3, 2007. *Id.* Sergeant Spurlock gave Lieutenant Lilley: (1) the response to resistance report he completed and filed on July 3, 2007, and (2) Alfrey's open case investigation into the arrest and subsequent charges against Damron and McCoy.[1] *Id.* That same day, Lieutenant Henry Banks sent a memorandum to Risk Management stating that Alfrey violated KSP policy based on his actions and transportation of McCoy. R. 33, Ex. 2 at 1. The next day, July 25, 2007, Alfrey resigned from KSP. R. 21, Ex. 1, Booth Aff. at 4. He did not return to duty between his July 5, 2007, suspension and his resignation on July 25, 2007. *Id.*

On May 28, 2008, the plaintiffs brought a 42 U.S.C. § 1983 action against Booth and

---

[1]The exhibit submitted to the Court showing what Lieutenant Lilley received from Sergeant Spurlock is cutoff. *See* R. 33, Ex. 1. Thus, it is possible that Sergeant Spurlock provided additional materials to Lieutenant Lilley. As there has been no argument that this missing evidence is relevant or creates a genuine issue of fact, the Court will decide this motion based on the evidence that the parties have put into the record.

Alfrey in both their individual and official capacities for the July 3, 2007, arrest, alleged assault, and subsequent detainment. *See* R. 1. They alleged that Booth and Alfrey violated the Fourth, Fifth, and Fourteenth Amendments. *See id.* Specifically, the complaint alleged that Booth: deprived the plaintiffs of their liberty without due process of law; deprived them of equal protection of the laws; failed to prevent Alfrey from unlawfully harassing, arresting and using excessive force against the plaintiffs; and unlawfully detained them. *See id.* The complaint also contained state law claims asserted against Alfrey. *See id.* On November 17, 2008, the Court dismissed the official capacity claims against Booth. *See* R. 14. On July 24, 2009, Booth moved to dismiss the individual capacity claims asserted against him. *See* R. 21. The plaintiffs responded to this motion on September 30, 2009, *see* R. 33, and Booth filed a reply on October 5, 2009, *see* R. 41.

## DISCUSSION

While there is no question that the facts alleged in the complaint are troubling, they simply do not implicate Booth in a way that would subject him to liability. Booth argues that qualified immunity bars the individual-capacity claims asserted against him. When confronted with a claim of qualified immunity, a court must decide whether (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In the instant case, the motion for summary judgment must be granted because the plaintiffs have not shown that Booth violated any of their constitutional rights.

In order for the plaintiffs to establish liability on Booth's part, they must show that Booth engaged in "active unconstitutional behavior, . . . [since] a mere failure to act [is] not sufficient." *Doe ex rel. Doe v. City of Roseville,* 296 F.3d 431, 440 (6th Cir. 2002) (citation omitted). Booth's affidavit demonstrates he had almost no involvement in the alleged assault, arrest, and detainment of the plaintiffs. *See* R. 21, Ex. 1, Booth Aff. Booth had no contact with Alfrey before the arrest of the plaintiffs or the alleged use of improper force. *Id.* at 1-2. He was not present for the events. *Id.* at 2. Further, he did not "authorize, direct, condone, encourage, acquiesce in, or have any prior knowledge of the activities of Trooper Alfrey with respect to any of the named Plaintiffs." *Id.*

Booth puts forth facts demonstrating that KSP almost immediately investigated Alfrey's actions on July 3, 2007. Alfrey reported that he used pepper spray on McCoy on July 3, 2007, the day of the arrest. *Id.* at 3. Per KSP policy, Sergeant Spurlock launched an investigation into Alfrey's use of force. *Id.* at 2-3. On the basis of that investigation, KSP suspended Alfrey from duty on July 5, 2007—just two days after the alleged assault. *Id.* at 3. Alfrey resigned on July 25, 2007, after KSP concluded that he violated its policy. *Id.* at 3-4; R. 33, Ex. 2 at 1. He did not return to duty between his suspension and resignation. R. 21, Ex. 1, Booth Aff. at 4. Thus, KSP likely prevented Alfrey from committing additional violations of its policy after it learned of the events on July 3, 2007.

After Booth showed that he had almost no involvement in the plaintiffs' arrest, the burden shifted to the plaintiffs to present sufficient evidence from which a jury could reasonably find for them. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The plaintiffs present

no such evidence in their response. This lack of evidence is sufficient grounds to grant Booth's motion. *See* Fed. R. Civ. P. 56(e)(2) (stating that a party opposing a properly supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading . . . [but it must in response by affidavit or otherwise] set out specific facts showing a genuine issue for trial.").

One fact, on its face, might suggest Alfrey had a propensity for violence and, more importantly, that Booth knew of this propensity. Booth knew that on July 1, 2007—two days before the alleged assault of McCoy—the mother of another individual, Donnie Allen, called to complain about Alfrey. R. 21, Ex. 1, Booth Aff. at 2. Allen's mother called to complain that Alfrey had used improper force when he arrested Allen. *Id.* The plaintiffs argue that this put Booth on notice of Alfrey's alleged propensity. R. 33 at 6. However, this fact fails to help the plaintiffs. Booth's affidavit and deposition are clear that Lieutenant Johnson—not Booth—advised Allen's mother that the arrested Allen himself should file a complaint since his mother was calling from out of state and did not have firsthand knowledge of Allen's arrest or alleged injuries. *Id.* at 3; R. 36, Booth Dep. at 56-58. But Allen did not file a complaint, and thus, neither Booth nor KSP had any reason to investigate at that point. *Id.* There was no other evidence that Alfrey had ever engaged in misconduct. Booth knew of no other formal complaints against Alfrey for use of force. R. 36, Booth Dep. at 57-58. Booth's knowledge of that one unsubstantiated complaint alone does not suggest active unconstitutional behavior on Booth's part. *Doe*, 296 F.3d at 440 (stating that "a mere failure to act was not sufficient" to sustain a supervisory liability claim in the § 1983 context).

The plaintiffs also argue that Booth should not get qualified immunity because KSP did not launch a "full scale investigation" until July 17, 2007, when Lieutenant Lilley received a letter from McCoy. R. 33 at 5. It is unclear whether this is true since Alfrey was suspended on July 5, 2007. R. 21, Ex. 1, Booth Aff. at 3. The facts suggest that the investigation was started on July 3, 2007, when Alfrey reported the use of pepper spray to Sergeant Spurlock. *Id.* Nonetheless, whether McCoy's letter caused a "full scale investigation" is irrelevant. KSP did respond to Alfrey's use of force and suspended him on July 5, 2007. *Id.* Ultimately, KSP concluded that he violated its policy. R. 33, Ex. 2 at 1. Alfrey did not return to duty after July 5, 2007, and he resigned on July 25, 2007. R. 21, Ex. 1, Booth Aff. at 3-4. All these facts show that neither KSP nor Booth turned a blind eye to complaints of misconduct from firsthand witnesses. Instead, the facts show that KSP responded swiftly and likely prevented Alfrey from committing any additional harm to the public. More significantly, the investigation provided no evidence that Booth had any involvement in the July 3, 2007, events involving Alfrey and the plaintiffs.

The plaintiffs argue that Booth is not entitled to qualified immunity based on the standard for supervisory liability in the Second Circuit and the Fourth Circuit. R. 33 at 5-6. Neither standard assists the plaintiffs' position. The plaintiffs contend that under the Second Circuit's standard Booth's alleged negligence is enough for supervisory liability in this § 1983 action. *See Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 1995). Even if this is a correct statement of the law in the Second Circuit, the Sixth Circuit has stated clearly that "it is not enough for [a] plaintiff to show that the defendant supervisors were sloppy, reckless or negligent in the

7

performance of their duties." *Doe*, 296 F.3d at 439. In other words, the Sixth Circuit requires the plaintiffs to show that a supervisor, like Booth, has done something more than simply negligently perform his duties. Thus, under the Sixth Circuit's standard, even if Booth was negligent it would not subject him to liability. Also, the facts put forth do not show negligence on Booth's part. Consequently, even under the Second Circuit's standard, the plaintiffs' claims against Booth would fail.

In addition, the plaintiffs assert that Booth has met the standard for supervisory liability from the Fourth Circuit, because Alfrey had a pattern of misconduct that was widespread or that at least had occurred on several different occasions. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citing *Slakan v. Porter*, 737 F.2d 368, 373-74 (4th Cir. 1984)). In making this conclusion, the plaintiffs misconstrue the evidence in the record, and thus, are incorrect. To establish supervisory liability in a § 1983 action, the Fourth Circuit does require, among other things, evidence that the conduct is widespread or at least has been used on several different occasions. *Id.* However, the plaintiffs do not cite to any such evidence in the record. Before the alleged assault of McCoy, Booth and KSP were only aware of one unsubstantiated complaint. That is far from widespread misconduct and is at most evidence of misconduct on a single occasion, which is clearly not the type of widespread abuse of which the Fourth Circuit was discussing.

The plaintiffs also point out many irrelevant facts that do nothing to assist their position that Booth should remain in this case. They mention that Booth never suspended or terminated an officer for excessive use of force, although there were four or five such complaints. R. 36,

8

Booth Dep. at 40-42. These facts alone do not demonstrate that Booth actively engaged in unconstitutional behavior. For example, the record does not show that Alfrey was the source of the complaints or why there was no action taken on the complaints. The plaintiffs could have presented evidence that the complaints were related to Alfrey using excessive force, had merit, and that Booth ignored them. They did nothing of that sort. Merely mentioning the fact that complaints occurred does not show that Booth knowingly allowed misconduct. The plaintiffs needed to present more facts to meet their burden, as the Court cannot speculate as to the circumstances of those complaints.

Likewise, the plaintiffs point out that Booth said in his deposition that he takes full responsibility for the conduct of his officers. *Id.* at 6-7. That broad statement alone does not affect Booth's right to qualified immunity. Instead, Booth is merely acknowledging an awareness that he cannot knowingly allow his officers to act unconstitutionally. Such a statement is not evidence that Booth knew of or acquiesced in all the actions of his officers.

The plaintiffs do state, in passing, that Booth knew of at least two occurrences where Alfrey used excessive force. R. 33 at 7. The argument is vague but it appears to state that Booth knew of the alleged assaults of Allen and McCoy. The only fact suggesting Booth knew of the alleged assault of Allen is Allen's mother's complaint. Beyond that call, the plaintiffs have presented no evidence to show Booth knew of it. As has been discussed, that complaint is insufficient to show active unconstitutional behavior. Moreover, the fact that Booth knew of the alleged assault of McCoy is immaterial. Once KSP became aware of this, it investigated the use of force and suspended Alfrey. It is unclear why Booth's knowledge of the assault of McCoy

9

is relevant. There is no evidence that Booth knew the assault was going to take place or allowed it to take place. If such evidence existed, the plaintiff should have obtained it or at least inquired about it during discovery and filed the evidence with their response. Without any evidence, there cannot be a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e)(2).

Ultimately, the plaintiffs have failed to meet their burden to present sufficient evidence from which a jury could reasonably find for them. *See Anderson*, 477 U.S. at 252. As a result, Booth's motion for summary judgment must be granted.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) Defendant Booth's Motion, R. 21, is **GRANTED**.

(2) The Section 1983 individual capacity claims against Booth are **DISMISSED WITH PREJUDICE**. Thus, Booth is **TERMINATED** as a party to this litigation.

This the 9th day of November, 2009.

Signed By:
*Amul R. Thapar* AT
United States District Judge